IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**WESLEY LARSON**,

    Plaintiff,

v.

**MICHAEL J. ASTRUE, Commissioner of Social Security**,

    Defendant.

No. 3:11-cv-06079-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Wesley Larson challenges the Commissioner's decision denying his claim for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g) and now affirm the Commissioner's decision.

**PROCEDURAL BACKGROUND**

    On February 22, 2007, Mr. Larson filed for DIB under Title II of the Social Security Act, claiming disability beginning on June 1, 2005. AR 117, 119, 138. The application was denied on May 17, 2007, and upon reconsideration on November 1, 2007. *Id.* at 13. Administrative law judge ("ALJ") James Yellowtail held a hearing on December 7, 2009. *Id.* On December 14, 2009, the ALJ issued his decision, finding Mr. Larson was not disabled from the alleged onset

1 – OPINION AND ORDER

date through the date of the ALJ's decision and denying Mr. Larson's claim. *Id*. at 21. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 12. Mr. Larson appealed on March 3, 2011.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner. *See Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); 20 C.F.R. § 404.1520 (establishing five-step evaluative process for DIB claims). At step one, he found Mr. Larson had not engaged in substantial gainful activity since the alleged onset date of June 1, 2005. AR 15. At step two, the ALJ concluded that Mr. Larson has the following severe impairments: post-traumatic stress disorder ("PTSD"), major depressive disorder, and personality disorder. *Id.* Continuing to step three, the ALJ concluded Mr. Larson's severe impairments did not meet or medically equal a disorder listed in the Commissioner's regulations. *Id*. at 16. The ALJ then evaluated Mr. Larson's residual functional capacity ("RFC") and found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can perform simple, routine tasks that do not involve more than occasional contact with the general public, co-workers, or supervisors. Due to occasional pain symptoms of undetermined etiology, the claimant must be permitted to change positions at will in order to alleviate discomfort.

*Id*. at 17–18. At step four, the ALJ found Mr. Larson could not perform his past relevant work. *Id*. at 20. Moving to step five, the ALJ asked a Vocational Expert ("VE") whether jobs exist in significant numbers in the national economy for an individual with Mr. Larson's age, education, work experience, and RFC. *Id*. at 21. The VE testified that, given those factors, Mr. Larson would be able to work as a stock checker, officer helper, and returns clerk, which are jobs that exist in significant numbers in Oregon and the national economy. *Id*. Relying on that testimony, the ALJ concluded Mr. Larson was "not disabled" through the date of the ALJ's decision. *Id*.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins*, 466 F.3d at 882; *see also Bray*, 554 F.3d at 1222 ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Mr. Larson raises two arguments. First, he argues the ALJ failed to properly assess the medical evidence. In particular, he argues the ALJ should have given more weight to the opinion of examining psychologist Dr. John Cochran, and less weight to the opinion of examining psychologist Dr. Robert Kruger. In the same vein, he argues the ALJ should have given more weight to a disability determination by the United States Department of Veterans Affairs ("VA") and records from the VA. Second, Mr. Larson argues the Commissioner improperly partially discredited his own testimony and the testimony of Mr. Larson's wife.

I.      **The Medical Evidence**

   A. *Examining Psychologists' Opinions*

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Where a doctor's opinion is contradicted by the opinion of another doctor, the Commissioner must give "specific and legitimate reasons" that are "supported by substantial evidence in the record" for rejecting the opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quotation omitted).

In this case, the ALJ was presented with two reports from examining psychologists. Dr. Kruger evaluated Mr. Larson on April 28, 2007, reviewed prior medical records, and administered a Structured Inventory of Malingered Symptomatology ("SIMS") test. AR 374–79. Dr. Kruger determined there was no evidence of an anxiety-related disorder, that Mr. Larson's memory was intact, and that "Mr. Larson's overall attention ability and capability of sustaining his attention on brief, basic, repetitive tasks were seen as fair, such that he would be able to complete those tasks adequately in an appropriate period of time." *Id.* at 378. Based on the results of the SIMS test, Dr. Kruger also concluded Mr. Larson had a "tendency to exaggerate his difficulties." *Id.*

The second report is from Dr. Cochran, who evaluated plaintiff on October 17, 2009, administered a series of tests, and completed a Functional Assessment of Work-Related Mental Activities ("Functional Assessment"). *Id.* at 574–87. Dr. Cochran concluded Mr. Larson has PTSD and anxiety disorder, among other things, and noted that Mr. Larson told him the anxiety issues arose when he was "out in public." *Id.* at 584–85. Similar to Dr. Kruger, Dr. Cochran

4 – OPINION AND ORDER

found Mr. Larson would have no difficulty understanding, remembering, and carrying out simple instructions, making simple work-related decisions, asking simple questions, and adhering to standards of neatness. *Id*. at 586–87. However, Dr. Cochran's Functional Assessment indicates Mr. Larson has a "moderately severe" limitation in completing a normal work-week without interruption from psychologically-based symptoms, in maintaining attention and concentration for an extended period of time, in accepting instructions, in responding appropriately to criticism, and in working with others without being distracted by them. *Id*.[1]

The ALJ discussed both reports in detail. He gave "great weight" to Dr. Kruger's opinion, finding it to be "generally consistent with the record as a whole." AR 19. However, he gave Dr. Cochran's opinion "partial weight to the extent it is consistent with [Dr. Cochran's] objective findings." *Id*. He explained that Dr. Cochran's finding of "moderately severe" limitations "is inconsistent with objective testing that revealed no deficits in social judgment or language skills." *Id*. Additionally, the ALJ noted that Dr. Cochran's finding of "moderately severe" limitations is inconsistent with Mr. Larson's testimony that he volunteers with Veterans of Foreign Wars ("VFW") and regularly attends church services. *Id*.

Plaintiff argues this analysis was erroneous but the first problem with that argument is that plaintiff has not explained what the conflict is between the ALJ's RFC and Dr. Cochran's findings. By checking "moderately severe" boxes next to certain work-related tasks, Dr. Cochran only indicated it would *sometimes* be *difficult* for Mr. Larson to perform certain tasks. For example, his "moderately severe" finding as to Mr. Larson's ability to complete a workweek

---

[1] Dr. Cochran also identified "mild" limitations for some work-related tasks and "moderate" limitations for others. Plaintiff does not argue the ALJ failed to account for these findings, but instead focuses on the "moderately severe" limitations identified above. That argument would fail, in any event, because the RFC is consistent with these findings. The "mild" and "moderate" ratings only indicate that these tasks would occasionally be difficult for Mr. Larson. *See* AR 586. Therefore, there was no basis for the ALJ to conclude that work requiring these tasks would be unavailable to Mr. Larson. Moreover, the RFC adequately accounted for any possible limitations associated with these other tasks by limiting the complexity of tasks for Mr. Larson and his exposure to other people.

5 – OPINION AND ORDER

without interruption from psychologically based symptoms translates to a finding that Mr. Larson can always complete a workweek without interruption, but will sometimes have "noticeable difficulty" doing so. *See id.* at 586 (defining "moderately severe"). That finding is not inconsistent with the RFC. In fact, the medical evidence indicates that Mr. Larson's psychological problems are triggered, or at least worsened, by exposure to other people. *See, e.g., id.* at 585 (Mr. Larson reporting his psychological symptoms appear when he is "out in public" and that is where he has had "disabling panic attacks"). The RFC limited him to only "occasional" work-place contact with others, and it therefore fairly accounts for the possibility that Mr. Larson's problems dealing with other people could sometimes make work difficult. Thus, because plaintiff has not established that the ALJ even needed to explain away a conflict between the RFC and Dr. Cochran's report, I reject plaintiff's argument that the ALJ erred in his explanation.

And in any event, the ALJ adequately justified an RFC that does conflict with Dr. Cochran's report. First, he noted that Dr. Kruger's conclusions—which did not include the "moderately severe" limitations suggested by Dr. Cochran—better aligned with the record as a whole. I agree. Among other things, two state agency mental consultants examined the evidence and found there was insufficient evidence to support a finding that Mr. Larson even suffered from an impairment that could qualify as "severe." AR 401–14, 483. That summary of the evidence aligns better with Dr. Kruger's report than it does with Dr. Cochran's report. And plaintiff points to no medical evidence that was unavailable to these consultants (besides Dr. Cochran's opinion), that could be considered inconsistent with Dr. Kruger's analysis.[2]

---

[2] Plaintiff seems to argue it was illogical for the ALJ to reject these consultants' conclusion concerning the lack of any "severe" impairment but to then partially reject Dr. Cochran's report. Since analyzing whether "severe" impairments exist is a distinct issue, however, I see no error in the ALJ's approach.

Additionally, the ALJ reasoned that Dr. Cochran's findings were internally inconsistent since he identified moderately severe limitations in tasks related to interacting with other people, but found no deficits in Mr. Larson's social judgment or language skills.  And he explained that Dr. Cochran's finding that Mr. Larson struggled to work with others and sustain concentration conflicts with Mr. Larson's own reports that he does volunteer work for the VFW.  Both of these reasons are rational interpretations of this evidence and therefore are adequate, even if other rational interpretations might exist.  *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld.") (quotation omitted).

Thus, I find the ALJ adequately accounted for Dr. Cochran's opinion in the RFC and—to the extent Dr. Cochran's opinion is read as contradicting the RFC—the ALJ provided specific, legitimate, and adequately supported reasons for partially rejecting Dr. Cochran's opinion.

### *B.  VA Disability Determination and Records*

An ALJ must generally accord great weight to a VA determination of disability, but an "ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

The VA found plaintiff unemployable due to a combination of conditions.  *See* AR 114; (Pl's Br. [14] 14).  The ALJ acknowledged this evidence but found "valid reasons exist for not accepting the VA disability determination."  AR 19.  Specifically, he reasoned that the VA did not consider the findings and opinions of Dr. Kruger and Dr. Cochran, which indicated a "greater functional capacity."  *Id.*

Plaintiff argues the ALJ's explanation was not persuasive, specific, or valid, but I disagree. The ALJ rejected the VA's ultimate conclusion as to employability because he considered the VA's finding inconsistent with other medical evidence. I agree with that conclusion because Dr. Kruger found no functional limitations suggesting Mr. Larson was unemployable. And even Dr. Cochran did not opine that Mr. Larson was unemployable or even unable to perform work-related activities. Thus, the ALJ's reason for not following the VA's conclusion was sufficient.

Plaintiff also argues the ALJ's RFC failed to account for several records of treatment by VA physicians. For example, he argues the ALJ ignored records from Dr. Robert Grenenow that indicate Mr. Larson suffers from PTSD. (Pl.'s Br. [14] 13). However, this evidence does not suggest any specific functional limitations the ALJ could have incorporated into the RFC and does not conflict with the RFC or the ALJ's analysis. I therefore reject this argument. *See, e.g., Howard ex rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative.").

## II.     Witness Testimony

### A. Claimant's Testimony

In analyzing a claimant's subjective testimony, an ALJ must engage in a two-step inquiry. First, the ALJ must determine whether the claimant presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (quotation omitted). The ALJ may consider ordinary

credibility factors such as inconsistent statements, objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this case, the ALJ discredited Mr. Larson's testimony to the extent Mr. Larson claimed symptom intensity, persistence, and limiting effects inconsistent with the RFC.[3] The ALJ reasoned that Dr. Kruger found Mr. Larson has a tendency to exaggerate, based on the SIMS test, and also that the medical evidence was not consistent with the extent of Mr. Larson's alleged symptoms. Both reasons are clear, convincing, and supported by the evidence. *See* AR 377, 378. Dr. Kruger found functional limitations consistent with the RFC and not consistent with more severe limitations alleged by plaintiff. And, although no other provider clearly opined that Mr. Larson has a tendency to exaggerate, that finding is supported by the evidence from Dr. Kruger. Dr. Cochran found Mr. Larson was not malingering, but that finding does not conflict with the ALJ's analysis since a tendency to exaggerate may be found whether or not there is sufficient evidence to conclude plaintiff was malingering. And even Dr. Cochran's report aligns with the ALJ's conclusion about exaggeration: Dr. Cochran concluded that testing showed normal verbal and visual memory skills, but Mr. Larson nevertheless claimed to have poor memory. *See id.* at 584. Accordingly, there was a sufficient basis for the ALJ's conclusion that

---

[3] Plaintiff argues the ALJ improperly defined an RFC and then, without more, simply found Mr. Allen not credible to the extent his testimony was inconsistent with the RFC. However, "[t]here is nothing wrong with an ALJ stating a conclusion and then explaining it, as opposed to providing explanation and then reaching a conclusion." *Black v. Astrue*, 10-cv-06409-MO, 2011 WL 6130534, at *6 (D. Or. Dec. 7, 2011). Thus, I reject this argument. The issue is whether the reasons the ALJ gave after the conclusion are sufficient.

9 – OPINION AND ORDER

Mr. Larson tended to exaggerate his limitations, which provides a second valid reason to partially discredit Mr. Larson's testimony.[4]

### B.  Karyl Larson

The ALJ has a duty to consider lay witness testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

Karyl Larson, Mr. Larson's wife, submitted a third party function report and testified at the hearing.  *See* AR 149–156.  The ALJ partially discredited her testimony, to the extent it was inconsistent with the RFC, explaining that her testimony "is not fully consistent with the medical and other evidence of record." *Id*. at 19.  This was a sufficient explanation.  Ms. Larson's testimony falls into two categories.  Some statements, such as her statement that Mr. Larson cannot remember tasks for 15 minutes, suggest specific work-related limitations. *See id.* at 49–51.  As the ALJ noted, however, these statements are inconsistent with the medical evidence, such as the reports of Dr. Kruger and Dr. Cochran that do not conclude Mr. Larson has trouble remembering things for more than 15 minutes.  In fact, Dr. Cochran described Mr. Larson's memory as "normal." *Id*. at 584.  Thus, the ALJ provided a valid and germane reason for discrediting this testimony. *See Lewis*, 236 F.3d at 512.  Other statements, such as Ms. Larson's statement that a lack of sleep "affects [Mr. Larson's] attitude," are vague and do not suggest any work-related limitations that the ALJ might have incorporated into the RFC. *See id.* at 150.

---

[4] It is less clear whether a third reason the ALJ gave—Mr. Larson's reported activities of volunteer work and attending church—is convincing.  However, since the ALJ gave at least two valid reasons independent of this reason, I decline to address this issue. *See Carmickle*, 533 F.3d at 1162.

10 – OPINION AND ORDER

Accordingly, the ALJ did not err by failing to discuss this evidence, since it was not significant or probative. *Howard, Barnhart*, 341 F.3d at 1012. The ALJ did not err in his treatment of this lay testimony.

## CONCLUSION

The Commissioner's decision is supported by substantial evidence and is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this   5th   day of April, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

11 – OPINION AND ORDER